HENRY J. LEWIS vs. THE HARTFORD DREDGING COMPANY.

Third Judicial District, New Haven, June Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A contract with an oyster-grower to spread shells over certain of his oyster grounds before the opening of the spawning season, having been abandoned without cause by the contractor, *held* that the oyster-grower might supply himself with crushed stone and use it for the same purpose, if it was the only suitable material then to be had in the market, and charge the contractor whatever it cost above the contract price for shells.

Expert testimony is admissible in such a case to show what material is suitable for spreading on such oyster ground.

The oyster-grower having written to the contractor that he had bought and was buying crushed stone at the latter's expense, *held* that the letter was admissible in favor of the writer, against the contractor, to show when and how the latter had notice of what the former was doing.

Part of the oyster ground, for want of time and of suitable material, remained unplanted during the season. *Held* that the rule of damages was compensation for the loss of the use of the land until it became practicable and proper to plant or otherwise improve it for oyster culture; in the usual course of that business; and that such loss would ordinarily be the fair rental value of the grounds, if that was ascertainable, otherwise interest on their market value in their unplanted condition, together with the taxes, for the time in question. *Held* also, that if the plaintiff could show that the failure to plant the whole of his grounds so disarranged the ordinary and natural succession of his crops, or disturbed the ordinary use of his other property, that he suffered special damages as a probable and direct result which both parties ought in reason to have foreseen, he might be allowed a further recovery upon proper amendment of his complaint; also for necessary expenditures made in preparation for the defendant's work and for planting that portion of his grounds which were in fact left unplanted.

Conjectural and speculative profits should not be allowed in assessing damages.

Lewis v. Hartford Dredging Co.

The findings of the trial court as to the good faith and reasonable conduct
  of the oyster-grower in buying crushed stone are not reviewable in
  this court.

[Argued June 3d—decided June 25th, 1896.]

ACTION for damages for breach of a dredging contract, brought to the Superior Court in Fairfield County and tried to the court, *Elmer, J.;* facts found and judgment rendered for the plaintiff for $4,449 damages, and appeal by the defendant for alleged errors in the rulings of the court. *Error in part.*

The contract was as follows:—" It is agreed by the Hartford Dredging Company, of Hartford, Connecticut, that they will do the following described work for H. J. Lewis, of Stratford, Connecticut, according to the terms, and in the manner, and between the dates hereinafter mentioned, and for the consideration stated in this contract, to wit: The Hartford Dredging Company agrees to commence the work of dredging for H. J. Lewis on the 15th day of June, 1893, and that the work shall continue daily, excepting Sundays and legal holidays, and such days as the stress of weather will not permit of work, or in case of the unavoidable breaking down of the machinery employed in said work; but, otherwise, it is agreed that the work shall continue daily until August 1st, 1893. The said dredging to be done in the Housatonic River, at the points designated on a chart which is submitted to us, and beginning at the same point in the channel of the river where we dredged last Summer, and digging towards a dock located on the Stratford beach. Or, if H. J. Lewis prefers digging at a point farther up the river than where we dug last Summer, as indicated on the said chart, we will dig from that point toward a dock on the Milford beach, as he may direct at the time of commencing the work, or at any time during the process of the work. We agree to dig 25,000 cubic yards of material between June 15th, 1893, and August 1st, 1893, accidents to machinery or unfavorable weather, as above excepted, not preventing; 5,000 cubic yards of which we will distribute on such oyster beds in Long Island Sound, as H. J. Lewis or his

Lewis *v.* Hartford Dredging Co.

representative shall indicate, off either Milford or Bridge-
port, Connecticut, as he may hereafter determine. The tow
on the said 5,000 cubic yards not to exceed six miles, and
the price for same to be twenty cents per cubic yard, meas-
ured in the scows. Twenty thousand cubic yards of the
said material to be towed to the oyster grounds of H. J.
Lewis off Westport, Connecticut, and distributed on same
at thirty-two and one half cents per cubic yard, measured
in the scows. We agree to put backing chains on the scows,
for the purpose of properly regulating the dumping of the
material and its distribution on the beds, to the satisfaction
of H. J. Lewis, who is to have an inspector on the dredging
machine and another on the scows, to attend to the direction
of the work in his interest. H. J. Lewis is to have sufficient
time for the distribution of the said material on his oyster
beds, so that it shall be done to his satisfaction. In order
that we may get out the full 25,000 cubic yards of material
between June 15th, 1893, and August 1st, 1893, as herein-
after mentioned, we agree not to supply any other party with
the said material, and it is agreed that the machinery we
employ to do the work shall be first class, and in good condi-
tion, and capable of doing the amount of work called for.

"THE HARTFORD DREDGING CO.,

"By A. H. CHARLTON, *President.*

"HARTFORD, Conn., March 15th, 1893."

The finding of the court stated the following facts :—

The plaintiff was engaged in planting and cultivating
oysters, and owned several thousand acres of oyster grounds,
part of which were under cultivation, and 475 acres of which
were off Westport, in Long Island Sound, and also an ex-
tensive plant of shops, docks and steamers. He raised seed
oysters and also cultivated and sold the mature oyster. Seed
oysters are raised by spreading or "planting "upon the oyster
grounds, at a depth of from three to eight fathoms below
the surface of the water, such materials as are adapted to
catch and intercept the oyster spawn which floats in the
waters of the Sound during the spawning season. The char-

acter of the material to be used for this purpose depends largely on the nature of the grounds, whether these are hard, "sticky," or "soft." Upon a hard bottom, shells, stones, gravel, and coarse sand, are used; upon a "sticky" bottom, which is one composed of a thin sediment of mud over a hard bottom, shells, stones, and coarse gravel; upon a "soft" bottom, shells, and such other light materials (including coarse gravel of large size), as will not sink down below the surface. Shells are the best material for any kind of bottom. The plaintiff's grounds off Westport presented a "sticky" bottom. Material spread to intercept the spawn, or as it is termed in the oyster trade, to "catch a set," should be deposited at or just prior to the spawning season, which generally occurs about the first of August. If spread too late for the spawning season, it is sometimes of value by hardening the bottom for purposes of future cultivation. When spread on a hard or "sticky" bottom, if no "set" is obtained, the material is often removed and replanted at another spawning season.

In the prosecution of the oyster business by the owners of large tracts of oyster grounds, like the plaintiff, a certain area is planted each year, that successive crops may be matured and marketed, or sold as seed oysters.

On May 6th, 1893, the plaintiff notified the defendant that the weather had been so cold that the oysters were likely to spawn later than usual, and asked that the dredging might begin June 26th, and extend to August 12th. To this modification of their contract the defendant assented, and the plaintiff also released the defendant from its obligation to deliver the 5,000 yards of material off Milford or Stratford, stipulated for in the contract.

The defendant had a good plant for dredging, but in May it was injured by a storm, and in June it employed one Tebo, the owner of an inferior plant, to commence the execution of the contract in its behalf. The point for dredging in the Housatonic river which the plaintiff designated, was one where, as he knew, the material that would be dredged up was largely shells. Tebo's plant was such as to make it

difficult for him to dump shells, and early in July he abandoned the work, whereupon, on July 7th, the defendant informed the plaintiff that it was doubtful if another dredging outfit could be obtained to perform the work called for by the contract, and that he must protect himself by obtaining other material that might be available.

In pursuance thereof the plaintiff, about the 8th day of July, 1893, purchased from dealers in New York 1,000 cubic yards of crushed stone to apply upon said contract, and caused the same to be spread over a certain portion of his oyster grounds at Westport. Crushed stone is a material suitable to be placed upon the " sticky " bottom of the oyster grounds of the plaintiff off Westport, where it was placed, for the purpose of " catching a set " and for the cultivation of oysters. The grounds referred to were those included in the designation of the contract.

The material purchased by the plaintiff at this time was the best available for the purpose of planting on the grounds off Westport, and the only material in the market known to the plaintiff adapted to said grounds. It became necessary that material should at once be planted on the grounds referred to, in order to be made available for the spawning season. These considerations were also applicable and true with reference to the subsequent purchase of crushed stone by the plaintiff to apply upon the contract.

On or about July 13th, 1893, the defendant notified the plaintiff that it would not be responsible for the substitution of crushed stone to apply upon the contract in place of the material contracted for. The defendant thereupon offered to supply the plaintiff, in lieu of the material which it had failed to supply under the provisions of the contract, 20,000 cubic yards of material to be dredged from the Bridgeport bar; and furnished the plaintiff with a sample of the materials taken from that place. This material consisted largely of mud, sand, gravel and some shells, and was much inferior to the material contracted for to be taken from the Housatonic river; and not at all adapted or suitable for planting on the grounds which were to be planted under the contract.

On the 13th day of July, 1893, the season for spawning being near at hand, to avoid loss for the want of material, the plaintiff offered to receive from defendant such amount of material from the Bridgeport bar as, added to that already spread upon the grounds, would complete the contract, at the price of fifteen cents per cubic yard, provided the defendant would guarantee the material supplied to be substantially equal to the sample submitted. This the defendant refused to do, but insisted that the plaintiff should accept the material just as it came from the dredge "India," taken from the Bridgeport bar, without reference to quality. The plaintiff refused to accept the material from the Bridgeport bar under such conditions, and notified the defendant that he would purchase crushed stone or other suitable material offered in the market. And thereafter he purchased 3,000 cubic yards of crushed stone, and caused the same to be spread over his grounds off Westport, in addition to that already placed there.

During this time the dredge "India" was taking material from the Bridgeport bar, to be supplied to other parties for their oyster grounds; but it was of much inferior quality and furnished at a much less price than that which was to have been supplied to the plaintiff from the Housatonic river, and was planted on a different kind of bottom than that off Westport. At or about this time the defendant notified the plaintiff that it would not be responsible for the purchase of stone to apply upon the contract, and would not recognize any obligation arising from the previous purchase of 1,000 cubic yards of the same material.

On July 20th the defendant set one Beard, owner of another dredging plant, at work under the contract, and he furnished the plaintiff with suitable material during the rest of that month, after which he withdrew, and the defendant abandoned the contract without further effort to supply the material called for therein, and thereafter the plaintiff was unable to obtain a dredging plant for the completion of the contract, nor was other material available, except crushed stone which the plaintiff purchased.

Subsequent to the discontinuance of the dredging work by the Beard Dredging Company, the plaintiff was unable to obtain crushed stone, or other suitable material to apply upon the contract, previous to the spawning season, as contemplated by the terms of the contract, which left 139 3/4 acres, out of a total of 475 acres which were to be planted under the contract at Westport, unplanted and without the deposit of any material.

At the date of the contract the defendant, although not technically acquainted with the cultivation of oysters, was familiar with the conditions existing at or near the point in the Housatonic river where the dredging was to be done. It had dredged for the plaintiff in previous years, for similar purposes, and knew that it was necessary that the material contracted for should be delivered within the time agreed on. While the parties were negotiating in July as to the substitution of other material for that which the defendant had failed to supply from the Housatonic river, the defendant was informed that it was necessary, to enable the plaintiff to obtain an oyster set, that his grounds should be spread by August 12th.

Oyster spawn will attach to hard substances of any character, and thus form a " set." The plaintiff had never used crushed stone for such a purpose before, but has continued it since, in 1894 and 1895, and with success. It cost him $1.30 per cubic yard, before it was spread, and a yard covered nearly double the area that would be covered by a yard of material from the river. The plaintiff's grounds off Westport had never been previously planted, except one lot of 100 acres. He had acquired them from the State at $1.25 an acre.

An oyster set is liable to be destroyed by storms, parasites, and other causes.

The court found that the plaintiff, after the defendant had become in default as to the execution of the contract, was justified in purchasing the 4,000 cubic yards of crushed stone in the market; thus reducing the damages he otherwise would have sustained by solely relying upon the perform-

ance of the defendant, and that this action of the plaintiff became necessary in order to secure material at the proper time for planting.

Crushed stone, though not equal to shells for all bottoms, is good material for planting for the purpose of catching an oyster set, and was adapted for that purpose upon the grounds of the plaintiff which were to be planted under the contract.

The court gave the plaintiff as damages, first, $2,938.13 for the difference between what he paid for buying and spreading crushed stone over the grounds planted with it, and what the material to be supplied and spread under the contract would have cost; and second, $2,280.13, for the difference between the market value on August 12th, of the unplanted grounds of 139 3/4 acres, and what would have been their market value if then planted as the contract provided (which was found to be $30 an acre), less the contract price for such planting. In making up this second item, the estimate did "not contemplate future profits arising from the actual raising of oysters upon the unplanted area, or the enhanced value of the same from a 'set' attached to the material spread thereon, but is based upon a comparison of the market value of the planted and unplanted territory at the time fixed in the contract for its completion, and while the result of such planting was unknown."

On July 19th, 1893, the plaintiff wrote to the defendant that owing to Mr. Tebo's apparent abandonment of the work and the statement of its superintendent that it would be impossible to proceed with it, he had ordered 1,000 yards of crushed stone for his oyster beds, and had notified it that he intended to order more at its expense, unless it could give some positive assurance that it would proceed to perform the contract; that he afterwards did order 3,000 yards more and was then having it spread, at its cost; that he had no objection to its resuming the execution of the contract, but in consequence of these purchases of stone, should require a correspondingly less amount of material from the river; that he had stopped ordering stone solely on its assurance of its intention to pro-

ceed under the contract, as otherwise he should have bought enough to plant all his grounds off Westport; and that any future failure of duty on its part would necessarily involve his buying more stone, if it could be had. This letter was offered in evidence, and admitted against the defendant's objection.

The court also admitted in evidence, against the defendant's objection, testimony from experts that the material dredged from the Bridgeport bar was unsuitable for spreading on a sticky bottom, and that crushed stone was suitable, and was adapted to catching a set; and also as to "what would be the difference in the market value upon August 12th, 1893, having reference to the nature of the ground to be planted, and to the kind of material at the place designated in the Housatonic river, between an acre of oyster ground so planted and an acre unplanted."

*Lewis Sperry*, for the appellant (defendant).

The crushed stone was not a similar and fair substitute for the material to be furnished under the contract. The court allowed this substitution at a greatly enhanced price, and has charged defendant with the difference, amounting to $2,938.13. If defendant tendered plaintiff materal which was suitable for oyster culture, in a general way of speaking, it was a substantial fulfillment of the terms of the contract. The defendant knew nothing about the quality of bottom of plaintiff's oyster grounds off Westport, nor did the defendant have any knowledge as to the particular adaptability of different materials to different bottoms, and no such knowledge or conditions are contemplated by the contract. This allowance was unwarranted, and if adopted as a rule of law, would lead to very serious consequences in a great majority of cases. The other item of damages is obtained by charging the defendant $30 an acre for 139 3/4 acres of unplanted territory, less some off-sets which the court allowed, and amounts in the aggregate to $2,280.13. No business is more speculative and hazardous than oyster culture. The lands in question were conveyed to the plaintiff by the State at $1.25 an acre

and had never been planted, with the exception of 100 acres. Whether the lands would ever prove of any value for oyster culture, could only be determined by experiment; and if the plaintiff had lost anything at all on the 139 3/4 acres not planted, he has lost nothing which a court of law can take into account, unless it be the interest on his investment for a single year, that is, the interest on $625. The law does not attach a market value to the uncertainties of the future. The law requires elements of certainty when it reduces the rights of contending litigants to the certainty of a judgment. *Brown et al.* v. *Smith*, 12 Cush. 366; *Wright* v. *Mulvaney*, 78 Wis. 89; *Griffin* v. *Colver*, 16 N. Y. 489; *I. & G. N. Ry. Co.* v. *Benitos*, 59 Tex. 326; *Gulf, Col. & S. F. Ry. Co.* v. *Helsey*, 62 id. 593; *Sabine & East Texas Ry. Co.* v. *Johnson*, 65 id. 389; *Sabine & East Texas Ry. Co.* v. *Joachimi*, 58 id. 456; *The Gulf, Col. & Santa Fé R. R. Co.* v. *Pool*, 70 id. 713; *Folsom* v. *Apple River Log Driving Co.*, 41 Wis. 602; *Van Pelt* v. *City of Davenport*, 42 Ia. 308; *Vermilya* v. *C. M. & St. P. Ry. Co.*, 66 id. 606; *Wolcott et al.* v. *Mount*, 36 N. J. 262; *Ferris* v. *Comstock, Ferre & Co.*, 33 Conn. 513; *Hadley* v. *Baxendale*, 9 Ex. 341; *Howard* v. *Stillwell & Bierce Mfg. Co.*, 139 U. S. 199; *Cohn* v. *Norton*, 57 Conn. 480. A man who sows twenty thousand cubic yards of dredge material upon the bottom of the sea, may hope to gather a crop of oysters four or five years afterwards, but that hope or expectation cannot be reduced to a certainty which the law requires as a basis of a judgment. He may never catch a set on the material planted, or, if he catches a set, it may be killed by storms or die without known cause, or be destroyed by oyster parasites or stolen by oyster thieves. The damages complained of in this case are not such as might fairly be supposed to have entered into the contemplation of the parties when they made the contract, nor such as might naturally be expected to follow its violation; nor are they so certain in their nature and amount and in respect to the cause from which they proceed, as the law requires when it is called upon to render a judgment. The expert testimony introduced by the plaintiff was clearly inadmissible; as the contract gave

the defendant no information as to the nature of the soil upon which the dredged material was to be spread. All the defendant was bound to do, in any event, was to ·supply the plaintiff with material generally suitable for oyster culture ; and this it tendered the plaintiff. The letter of plaintiff to defendant, dated July 19th, 1893, was also inadmissible. It consisted of declarations made by plaintiff in his own behalf and in contemplation of this suit. *Smith* v. *Phipps*, 65 Conn. 302.

*Stiles Judson, Jr.*, for the appellee (plaintiff).

The defendant had in previous years supplied the plaintiff with river material, and was familiar with the nature of the material to be taken from the Housatonic river. Having abandoned its contract, the plaintiff was justified in obtaining crushed stone as a substitute.  1 Suth. on Dam. 156 ; *Ward's etc. Co.* v. *Elkins*, 34 Mich. 442 ; *Paine* v. *Sherwood*, 21 Minn. 225 ; *Dobbins* v. *Duzuid*, 65 Ill. 465 ; *Beymer* v. *McBridge*, 37 Iowa, 118 ; *Hinde* v. *Liddell*, 10 Q. B. 266 ; *Culin* v. *Glass Works*, 108 Pa. St. 221 ; *Clark* v. *Russell*, 110 Mass. 133.  The court committed no error in its award of damages for the unplanted territory.  The finding disposes of the defendant's claim that it was the duty of the plaintiff to accept the material tendered by the defendant and dredged from the Bridgeport bar.  Parties must be deemed to have contemplated the natural and ordinary results that would be expected in the usual course to flow from the breach of a contract.  *Cory* v. *Shipbuilding Co.*, L. R. 3 Q. B. 181 ; *Cohn* v. *Norton*, 57 Conn. 481 ; *Schulze* v. *Ry. Co.*, 19 Q. B. Div. 30 ; *Hadley* v. *Baxendale*, 9 Ex. 341 ; 1 Suth. on Dam. 74, 77.  In the case at bar the defendant knew the purpose of distributing the material on these oyster grounds, and the importance of having it upon the ground by a stated period, and this knowledge brings the case within the class of cases in which even prospective profits, *as such*, might have been proven ; but instead, the conservative course was pursued, of showing what would have been the value of the material over the ground, when the contract should have been com-

pleted, to the plaintiff in the conduct of his business. This certainly was not error. *Booth* v. *Rolling Mill Co.*, 60 N. Y. 494; *Abbott* v. *Hapgood*, 150 Mass. 253; *Williams* v. *Vanderbilt*, 28 N. Y. 224; *Ehrgott* v. *N. Y.*, 96 id. 264; *Drake* v. *Kiely*, 93 Pa. St. 492; *Hamilton* v. *Ry. Co.*, 96 N. Car. 398; *Denning* v. *Ry. Co.*, 48 N. H. 455; 1 Suth. on Dam. 79; *Borrils* v. *Hutchinson*, 18 C. B. N. S. 466; *McHose* v. *Fulmer*, 73 Pa. St. 365. Profits are not objectionable to the rule, if made reasonably certain. *Hubbard* v. *Rowell*, 51 Conn. 424; *Cohn* v. *Norton*, 57 id. 481; *Griffin* v. *Colver*, 16 N. Y. 491; *Wakeman* v. *Mfy. Co.*, 101 id. 205; *Harrolds* v. *State*, 89 id. 36. When a plaintiff is deprived of facilities for carrying on his business, and it is apparent to the defendant that his default will naturally produce that result, the plaintiff may recover for the loss sustained in his business. 1 Sedgwick on Dam. § 133; *Ry. Co.* v. *Pritchard*, 77 Ga. 412; *Lange* v. *Wagner*, 52 Md. 310. The expert evidence to show the character of the bottom to be planted, was admissible; as was also the plaintiff's letter.

BALDWIN, J.   The contract in suit was one for services to be rendered in dredging material from the bed of the Housatonic river at a designated point, and spreading it over the plaintiff's oyster grounds at Westport, by a certain day in August, when the spawning season for oysters was expected to open. These grounds were of such a character that for raising seed oysters upon them it was necessary to spread some hard material over them, in order to intercept the floating spawn. This, in the phrase of the trade, is "planting" them, to "catch a set." The material which could be dredged up at the point agreed on was largely shells, and better adapted to use on these grounds than anything else. To do work of this description, a certain kind of dredging outfit is required, capable of dumping shells with facility. The defendant had such an outfit, but instead of employing it in the execution of the contract, employed one Tebo to undertake it, with an inferior and unsuitable plant.. Tebo, finding that his outfit was ill adapted to dump-

ing shells, abandoned the work after a few days, and the superintendent of the defendant then informed the plaintiff that it was doubtful if any other dredging outfit could be obtained to perform the work, and that he "must protect himself by obtaining other material that might be available." Thereupon he bought crushed stone in New York, and had it spread upon part of his grounds, at an expense considerably greater than that to which he would have been subject, had they been planted as the contract required. Such stone was the best material then available for planting purposes, and the only material in the market, so far as the plaintiff knew, which was adapted for use upon his grounds.

The Superior Court, in assessing the plaintiff's damages, properly allowed him this difference in cost. The breach of a contract to render services ordinarily entails a liability for nothing more than the difference between what it would cost to get the same services performed by another, and the contract price. But in the case at bar no other could be found who was able to do the work. It could not be undertaken without a peculiar kind of outfit, which few possessed. The plaintiff only bought the crushed stone after the defendant had informed him that it was doubtful if such an outfit could be anywhere procured, and that he must protect himself by procuring other material than that which the contract contemplated. While it was much more costly than the river material would have been, it was the only thing to be had which would answer the purpose, and this purpose was one of which the defendant had reasonable notice before the contract was executed. The point at which the material was to be dredged was so far determined that the defendant could easily have ascertained the character of the river bed ; and the place of delivery was also fully described. The defendant had dredged for oyster-growers before, and had done this for the plaintiff among others, to enable him to plant his oyster grounds for catching a set. Soundings would readily have disclosed the character of the bottom on which the material obtained from the river was to be spread. The defendant had no right to assume that any kind of material

which might be dredged up anywhere would be adapted for use upon these grounds; and the plaintiff was justified in refusing to accept its tender of the muddy deposit obtained from the Bridgeport bar. He was justified also in taking the defendant at its word, and protecting himself against the consequence of its default, by procuring suitable material for his purposes elsewhere. That he acted reasonably in the purchases he made is conclusively established by the findings of the trial court; and the numerous exceptions taken by the defendant to its conclusions of fact from the evidence in this respect are not the subject of an appeal. *Enfield* v. *Ellington*, 67 Conn. 459.

To show that the material dredged from the Bridgeport bar was unsuitable for use on a sticky bottom, and that crushed stone was suitable, and well adapted for catching a set, expert testimony was properly received. Only from those skilled in oyster culture could information on these points be expected.

The letter from the plaintiff of July 19th, while evidently written in an argumentative strain, was admissible to show that he gave the defendant prompt notice of his intention to set up the claims which are the basis of this suit, and to protect himself at its expense by the purchase of crushed stone.

But in the admission of evidence as to the difference in market value on August 12th between an acre of the plaintiff's oyster grounds, unplanted, and an acre planted in the manner provided by the contract, as well as in the award of damages including such an estimated difference in value, there was error.

By its failure to provide the proper material for planting part of these grounds, the defendant became liable to pay the plaintiff such damages as might have been reasonably contemplated, at the date of the contract, as the probable and direct result of its breach. The defendant knew that the material which it was to dredge and spread was wanted to form a bed for oyster culture, and to form it by the opening of the spawning season. These special circumstances were in the minds of both parties; but if they could, in any case,

avail to create a right to special damages of the nature claimed, for a failure to prepare the grounds for oyster cultivation,—the sole use to which they could be put,—it would be only on proof either that such grounds, when planted with suitable material, were permanently improved, or that such material generally catches a set, and that a set generally results in a valuable crop of seed oysters. On the contrary, however, it appeared that the results of planting were uncertain and conjectural in character, and the trial court states that the item of $2,280.13, included in its award of damages, which is now in question, was not based on any consideration of "future profits arising from the actual raising of oysters upon the unplanted area, or the enhanced value of the same from a 'set' attached to the material spread thereon, but is based upon a comparison of the market value of the planted and unplanted territory at the time fixed in the contract for its completion, and while the result of such planting was unknown."

This difference in market value was fixed at $30 an acre, while the contract price for planting (for which a deduction was allowed in ascertaining the exact loss) averaged less than $14 an acre. No part of this enhanced value of over $16 an acre could be attributed to any hardening of the bottom, by which, although no set were obtained, the grounds would be permanently improved. This was explicitly admitted in the trial by counsel for the plaintiff; and although that circumstance is not mentioned in the finding of the trial court, as the defendant specially requested that it be stated, and it appears in an extract from the official stenographic report of the proceedings, filed with the request, which is agreed by counsel for both parties to be a correct narrative of what occurred, we consider the finding as if it had been so drawn as to set forth the admission, as made. It follows that the expert witnesses and the court must have viewed the increase of value which would have followed the execution of the contract, as coming from the adaptation of the grounds to oyster culture during the spawning season then about to open. To allow for any enhancement of value on

that account is, practically, to speculate on the chances of catching a set and raising a profitable crop. Such consequences were too remote for consideration, and too uncertain, both with respect to their nature and to the cause from which they would proceed. *Cohn* v. *Norton*, 57 Conn. 480, 494; *Howard* v. *Stillwell & Bierce Mfg. Co.*, 139 U. S. 199.

As respects the area necessarily left unplanted in consequence of the defendant's default, damages (in the absence of special circumstances calling for the application of a different rule) should have been limited to compensation for the loss of the use of the land until it again became practicable and proper to plant or otherwise improve it for oyster cultivation, in the usual course of the oyster growers' business. Such loss would ordinarily be the fair rental value of the grounds, or if this could not be ascertained, the interest on their market value, in their unplanted condition, with the amount chargeable for taxes upon them, for the period in question.

The finding states however, that the plaintiff owned several thousand acres of oyster grounds, only a portion of which was under cultivation, and an extensive plant of shops, docks, and oyster steamers. Of these grounds, 475 acres lay off Westport, of which only a hundred had ever been planted. In the prosecution of the oyster business " a certain area of oyster ground is planted each year, that successive crops may be matured and marketed or sold as seed oysters." If these special circumstances were or ought to have been known to the defendant before the execution of the contract in suit, and if the plaintiff could show that the failure to plant the whole of the Westport grounds so disarranged the ordinary and natural succession of his crops, or otherwise disturbed the ordinary and natural course of the business as respects the use of his other property, that he suffered special damages as a probable and direct result, which both parties ought, in reason, to have foreseen, a further recovery might be allowed, upon such an amendment of the complaint as to apprise the defendant of the nature of the loss actually sustained. The plaintiff has alleged that he incurred expense

in locating and staking out the place in the river where the dredging was to be done, and securing a license from the government of the United States for dredging there, and hiring inspectors for the work, and for scows and harrows to complete the distribution of the material to be dredged, over his grounds, and steamers chartered to aid in the same work; and that he should be reimbursed for such part of these payments as was properly made to secure the planting of the portion of his grounds which was in fact left unplanted. If such special circumstances existed, and were or should have been in the contemplation of the parties when the contract was executed, the plaintiff's claim in this respect also would be a proper one, so far as his expenditures were reasonably necessary for the purpose, subject to a deduction for any benefits which he may have otherwise received from them.

There is error in the award of the damages on account of the unplanted oyster grounds, and a new trial is granted for the sole purpose of re-assessing the damages on that account, in accordance with the principles above stated.

In this opinion the other judges concurred.