******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MEADOWBROOK CENTER, INC.
*v.* ROBERT BUCHMAN
(AC 34234)

Gruendel, Bear and Schaller, Js.

*Argued May 22, 2013—officially released April 8, 2014*

(Appeal from Superior Court, judicial district of Hartford, Hon. Robert J. Hale, judge trial referee.)

*J. Xavier Pryor*, for the appellant (defendant).

*Edward M. Rosenthal*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Robert Buchman, appeals from the judgment of the trial court in favor of the plaintiff, Meadowbrook Center, Inc., on its claims for breach of contract and promissory estoppel. The principal issue to be decided, which is dispositive of the appeal, concerns the causation aspect of damages.[1] The defendant contends that the award of damages was impermissibly speculative because the record does not disclose any evidence indicating that the defendant's conduct caused the damages complained of. We agree and, accordingly, reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In November, 2006, the defendant entered into an admission agreement (agreement) with the plaintiff, a skilled nursing care facility, regarding residential care for the defendant's mother, Maude Buchman, who was suffering from dementia. The agreement identified the defendant's mother as "the [r]esident" and the defendant as "the [r]esponsible [p]arty."

The agreement outlines, among other things, the responsibilities of the resident and the responsible party with respect to payment for the resident's care at the facility. Specifically, § II of the agreement, titled "Payment," provides in relevant part that "[t]he resident . . . agrees to pay the [f]acility the total per diem rate, [defined in § XIV of the agreement as $323] . . . except to the extent that payment is made directly to the [f]acility by a third party such as Medicare [or] Medicaid . . . . The obligation to pay said total per diem rate shall commence with the day the [r]esident is admitted to the [f]acility and continue until the [r]esident has been discharged and payment in full has been made for all services rendered." Section III of the agreement, titled "Security Deposits," states, inter alia, that upon admission to the facility, the resident "agrees to pay the [f]acility a security deposit equal to one month's total per diem rate . . . ." Section IV (1) of the agreement, "Resident's Assets," provides in relevant part that with respect to Medicaid assistance, the resident and responsible party agree that "[a]t the time that the [r]esident's assets approach [$10,000], if the [r]esident does not have monthly income sufficient to pay for the cost of care and services, the [r]esident and [r]esponsible [p]arty agree to inform the [f]acility of the status of the [r]esident's assets and to make prompt application for Medicaid assistance to the Connecticut Department of Social Services [department]." Section IV (2) of the agreement provides that the resident and responsible party "agree to provide all information that may be requested by the [department] in connection with the application in accordance with any deadlines established by the [d]epartment," and § IV (4) of the agreement provides in relevant part that the resident

and responsible party "agree to act promptly and expeditiously to establish and maintain eligibility for Medicaid assistance . . . ." Section IV (5) provides that if the responsible party has received a transfer of assets from the resident that results in the resident's ineligibility for Medicaid, the responsible party "agrees that these assets, or an amount of the [r]esponsible [p]arty's funds at least equal to these assets, will be used for the cost of care and services rendered to the [r]esident until the [r]esident is determined to be eligible for Medicaid assistance . . . ."[2]

The defendant's mother entered the facility on November 15, 2006. Until approximately July, 2008, her care was funded by her assets. Once those assets were exhausted, a Medicaid assistance application was filed with the department on behalf of the defendant's mother. The department sent a letter to the defendant, dated August 22, 2008, requesting certain information to complete the Medicaid application. The letter stated that the defendant must send in the requested information by September 8, 2008, and provided that if the department did not hear from the defendant or receive "at least some of the items" requested by that date, the Medicaid application would be denied. The department sent a second letter to the defendant, dated August 28, 2009, again requiring that the defendant provide the requested information in connection with his mother's Medicaid application. This letter stated: "Send in this information by 9/14/09. . . . If I do not get this information by the due date, this application will be denied. You have not responded in a very long time to this request for information. I am giving you this final request for the benefit of [the facility]." By notice dated September 16, 2009, the department denied the Medicaid application, stating as the basis for denial: "You failed to give us enough information or verification we need to prove you are eligible."

The defendant's mother remained a resident at the facility until her death on May 11, 2009. At the time of her death, the defendant's mother had an unpaid balance of $99,820.78 due to the facility. The parties stipulated to the trial court that if the department had granted Medicaid benefits to the defendant's mother, the department would have paid the facility $47,561.18.

In its complaint, dated January 22, 2010, the plaintiff alleged, inter alia, that the defendant breached the agreement by failing to provide the department with the requested information for his mother's Medicaid application in a timely fashion. The plaintiff also alleged a promissory estoppel claim, asserting, inter alia, that the defendant promised to utilize his mother's income and assets toward the cost of care at the facility, and to apply for Medicaid benefits and respond promptly to the department's requests for information in conjunction with the Medicaid application, and that the plaintiff

relied upon the defendant's representations to its detriment in providing care to the defendant's mother.

A court trial commenced on October 13, 2011. At the close of the plaintiff's case-in-chief, the defendant moved for summary judgment, asserting, inter alia, that the plaintiff had failed to name the defendant as a party to the action in his capacity as conservator of his mother's estate, and that any evidence of the defendant's actions or omissions in his role as conservator bore no relevance to the issues before the court.[3] The defendant also argued that the agreement did not impose any personal liability on the responsible party except in the circumstance contemplated by § IV (5) of the agreement, i.e., where the responsible party has received a transfer of assets from the resident that results in the resident's ineligibility for Medicaid, and he further contended that the plaintiff had not proven that his mother would have qualified for Medicaid even if the requested information had been given to the department. The court denied that motion, and the defendant then rested.

Following a luncheon recess, the court issued an oral decision in favor of the plaintiff. With respect to the plaintiff's breach of contract claim, the court found that: (1) the plaintiff entered into a contract with the defendant; (2) the contract provided that the defendant would timely supply all information requested by the department in connection with an application for Medicaid; (3) the consideration for the contract was the agreement of the plaintiff to supply care to the defendant's mother; (4) the defendant signed the contract as the responsible party; (5) the defendant failed to fulfill the terms of the contract by not supplying the requested information to the department; and (6) as a result, "the defendant caused the plaintiff to lose the Medicaid money." The court found that the defendant's appointment as conservator did not relieve him of his duty to the plaintiff as the responsible party who signed the agreement, and that there was no need for the defendant, in his role as conservator, to be named as a separate party to the action. Additionally, the court found that the doctrine of promissory estoppel applied because (1) the defendant entered into a promise with the plaintiff to provide information to the department in connection with his mother's Medicaid application; (2) the plaintiff relied on this promise and provided care to the defendant's mother; and (3) the plaintiff lost the benefit of Medicaid as a result of the defendant's failure to fulfill the promise.

In accordance with its oral ruling, the court rendered judgment in the plaintiff's favor on October 18, 2011, and awarded damages in the amount of $47,561.15 plus attorney's fees to be determined postjudgment.[4] The defendant thereafter filed motions for reargument, for articulation, and to open the judgment, which the court

denied on January 3, 2012. This appeal followed.

I

We first address the defendant's claim that the award of damages stemming from his breach of the agreement was impermissibly speculative.[5] Specifically, the defendant claims that the plaintiff failed to adduce any evidence to support the court's finding that his breach of the aforementioned contractual obligations "caused the plaintiff to lose the Medicaid money."[6] On our review of the record before us, we are compelled to agree.

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . It has traditionally been held that a party may recover general contract damages for any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself." (Internal quotation marks omitted.) *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 32, 662 A.2d 89 (1995). "The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Keith E. Simpson Associates, Inc.* v. *Ross*, 125 Conn. App. 539, 542, 9 A.3d 394 (2010).

It is well established that "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Pelletier* v. *Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1100 (2008). Although this court has intimated that causation is an additional element thereof; see *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–504, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006); proof of causation more properly is classified as part and parcel of a party's claim for breach of contract damages. As the United States Court of Appeals for the Federal Circuit aptly explained, "damages for breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." (Internal quotation marks omitted.) *Kansas Gas & Electric Co.* v. *United States*, 685 F.3d 1361, 1369 (Fed. Cir. 2012); see also *National Market Share, Inc.* v. *Sterling National Bank,*

392 F.3d 520, 525 (2d Cir. 2004) ("[c]ausation is an essential element of damages in a breach of contract action"); *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 316, 514 A.2d 734 (1986) ("[w]e believe that the evidence was sufficient to support the jury's determination that the breach of contract *caused the plaintiff to suffer damages* in this case" [emphasis added]); 11 J. Perillo, Corbin on Contracts (Rev. Ed. 2005) § 55.7, p. 26 (in action for breach of contract "a causal relation [must] be shown to exist between the defendant's conduct and the harm for which damages are sought"); 3 Restatement (Second), Contracts § 346 (1981) (in order to receive anything other than nominal damages, party must prove both that breach of contract "caused" loss and amount of loss).

The specific calculation of damages incurred in the present case definitively was established due to the parties' stipulation. The more problematic question is whether the plaintiff presented sufficient evidence to establish that the defendant's breach of the contract was the cause of those damages.

The causation requirement focuses on whether a loss "may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself." (Internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, supra, 201 Conn. 319, quoting *Hadley* v. *Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145 (1854). This court also has stated that "in order to recover for breach of contract, a plaintiff must prove that he or she sustained damages as a direct and proximate result of the defendant's breach."[7] *Warning Lights & Scaffold Service, Inc.* v. *O & G Industries, Inc.*, 102 Conn. App. 267, 271, 925 A.2d 359 (2007), citing *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, supra, 93 Conn. App. 503–504; see also *Carco Group, Inc.* v. *Maconachy*, 383 Fed. Appx. 73, 75 (2d Cir. 2010) (damages for breach of contract must be directly and proximately caused by breach); *Kay Petroleum Corp.* v. *Piergrossi*, 137 Conn. 620, 624, 79 A.2d 829 (1951) ("[u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach").

Our Supreme Court distinguished the causation standards applicable to tort and breach of contract actions in *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 508 A.2d 438 (1986). That case involved an action for negligent preparation of a boundary survey. Id., 684. The court explained that "the law of torts differs from the law of contracts with respect to the applicable causation standard for awarding damages. Under the circumstances of this case, the plaintiffs are entitled to recover all damages proximately caused by the defendant's negligent performance of the contract, whether

or not the consequences were reasonably anticipated. . . . In an action founded solely on breach of contract, however, the recovery of the plaintiffs would have been limited to those damages the defendant had reason to foresee as the probable result of the breach at the time when the contract was made." (Citations omitted.) Id., 689 n.3; accord *Exxon Co.* v. *Sofec, Inc.*, 517 U.S. 830, 840, 116 S. Ct. 1813, 135 L. Ed. 2d 113 (1996) ("the requirement of foreseeability may be more stringent in the context of contract liability than it is in the context of tort liability"). In *Mattegat* v. *Klopfenstein*, 50 Conn. App. 97, 717 A.2d 276, cert. denied, 247 Conn. 922, 722 A.2d 810 (1998), this court expressly relied on that precedent in detailing the causation standard applicable to an action for negligent performance of a contract, as contrasted to one for breach of contract. We stated: "[T]he proximate cause test for negligence applies when assessing damages for negligent performance of a contract. The requirement of proximate cause is a less severe limitation of liability than the requirement of anticipation or foreseeability in breach of contract cases. A proximate cause is [a]n actual cause that is a substantial factor in the resulting harm . . . ." (Internal quotation marks omitted.) Id., 105. Accordingly, under Connecticut law, the causation standard applicable to breach of contract actions asks not whether a defendant's conduct was a proximate cause of the plaintiff's injuries, but rather whether those injuries were foreseeable to the defendant and naturally and directly resulted from the defendant's conduct.

With that standard in mind, we turn to the measure of proof in the present case. "It is incumbent on the party asserting either direct or consequential damages to provide *sufficient* evidence to prove such damages." (Emphasis added.) *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 304, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008). Generally, "[p]roof of damages should be established with reasonable certainty and not speculatively and problematically." (Internal quotation marks omitted.) *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, 277 Conn. 21, 35, 889 A.2d 785 (2006); see also *Doeltz* v. *Longshore, Inc.*, 126 Conn. 597, 601, 13 A.2d 505 (1940) ("evidence of such certainty as the nature of the case permits should be produced"). At the same time, the quantum of proof required is relaxed in instances involving the wrongful breach of a contract by the defendant. As the United States Supreme Court observed more than one-half century ago: "[E]ven where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances juries are allowed to act on probable and inferential, as well as direct and

positive proof. . . . Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain." (Citations omitted; internal quotation marks omitted.) *Bigelow* v. *RKO Radio Pictures, Inc.*, 327 U.S. 251, 264–65, 66 S. Ct. 574, 90 L. Ed. 652 (1946); see also *United States Naval Institute* v. *Charter Communications, Inc.*, 936 F.2d 692, 697 (2d Cir. 1991) ("it is not error to lay the normal uncertainty . . . at the door of the wrongdoer who altered the proper course of events, instead of at the door of the injured party"); *Jay Edwards, Inc.* v. *New England Toyota Distributor, Inc.*, 708 F.2d 814, 821 (1st Cir.) ("where the defendant's wrongdoing created the risk of uncertainty, the defendant cannot complain about imprecision"), cert. denied, 464 U.S. 894, 104 S. Ct. 241, 78 L. Ed. 2d 231 (1983); *Locke* v. *United States*, 283 F.2d 521, 524 (Ct. Cl. 1960) ("[t]he defendant who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong by insisting on proof which by reason of his breach is unobtainable"); *Wood* v. *Pender-Doxey Grocery Co.*, 151 Va. 706, 713, 144 S.E. 635 (1928) ("There are cases, however, and we think this is one, in which the question of an intentional wrong is involved. In such cases the degree of proof necessary is much relaxed in favor of the injured party. Where the wrongdoer creates the situation that makes proof of the exact amount of damages difficult, he must realize that in such cases juries are allowed to act upon probable and inferential as well as direct and positive, proof." [Emphasis omitted; internal quotation marks omitted.]).

For that reason, the Restatement (Second) of Contracts provides that a court may consider the willfulness of a party's breach in assessing damages: "Doubts are generally resolved against the party in breach. A party who has, by his breach, forced the injured party to seek compensation in damages should not be allowed to profit from his breach where it is established that a significant loss has occurred. A court may take into account all the circumstances of the breach, including willfulness, in deciding whether to require a lesser degree of certainty, giving greater discretion to the trier of the facts." 3 Restatement (Second), supra, § 352, comment (a).

Even under a more relaxed standard, the plaintiff must furnish *some* proof that the breach caused the damages of which it complains. As one court has noted, while "damages need not be ascertainable with absolute exactness or mathematical precision . . . recovery for speculative damages is precluded." (Internal quotation marks omitted.) *Indiana Michigan Power Co.* v. *United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005); accord *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, supra, 277 Conn. 35 (award of damages may not

be based on conjecture). Put simply, the trial court "*must have evidence* by which it can calculate the damages, which is not merely subjective or speculative . . . ." (Emphasis added.) *Bronson & Townsend Co.* v. *Battistoni*, 167 Conn. 321, 326–27, 355 A.2d 299 (1974).

Such evidence of causation is lacking in the present case. It is true that the record contains testimonial and documentary evidence demonstrating that the department denied the Medicaid application because the defendant failed to comply with his contractual obligation to provide the required financial information to the department. The record also contains the parties' stipulation that *if* the department had granted the application for Medicaid benefits, the department would have paid the facility $47,561.18—a figure further supported in the record by invoices from the plaintiff.[8] Yet, the plaintiff produced no evidence that established or supported an inference that, had the defendant complied with his obligations under the agreement, the department would have granted, and the plaintiff would have received, those Medicaid benefits. The absence of any such evidence whatsoever is fatal to the plaintiff's claim for $47,561 in damages.

The testimonial evidence submitted to the court demonstrated, on the one hand, that submitting the proper information to the department merely triggered a review of the resident's eligibility and, on the other hand, the submission of such information was not a guarantee of approval to receive such benefits. John Leveque, an eligibility services supervisor at the department, testified that the department could not determine whether an applicant qualified for Medicaid absent a review of the applicant's financial information, which was not furnished to the department in the present case. As the defendant notes in his appellate brief, the plaintiff did not ask Leveque "if, based upon the defendant's testimony regarding the assets maintained by [his mother], he had an opinion regarding whether . . . [she] would have qualified for [such] benefits." In addition, the record before us does not indicate that the plaintiff was prevented from presenting the proper financial documentation, expert testimony, or other evidence that would have otherwise established the resident's likelihood of approval, nor has the plaintiff in this appeal directed our attention to any such evidence. As a result, the court's implicit yet necessary finding that the plaintiff would have received the Medicaid funds had the defendant complied with his obligations under the agreement[9] was little more than "a pure guess and was wholly unsupported" by the evidence adduced at trial. *Doeltz* v. *Longshore, Inc.*, supra, 126 Conn. 602.

Under Connecticut law, damages may not be predicated on a contingency. *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, supra, 277 Conn. 35. That precept is perhaps best embodied in *Lewis* v. *Hart-*

*ford Dredging Co.*, 68 Conn. 221, 35 A. 1127 (1896). The plaintiff in that case sought damages based on the difference between the actual value and the projected market value of its oyster beds had the defendant dredging company not breached its contract. Id., 232–35. Our Supreme Court rejected that measure of damages as speculative because the projected market value of the plaintiff's oyster beds was based on the contingency of a successful cultivation of oysters in those beds. Id., 235–36; see also *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, supra, 36 (claim of damages speculative because plaintiff's damages calculus subject to contingencies that had not been resolved at operative time); *Harper Machinery Co.* v. *Ryan-Unmack Co.*, 85 Conn. 359, 364, 82 A. 1027 (1912) (A claim of damages is speculative where "the right to recover them was still to be determined. The calculation of such damages would proceed upon a contingency which might not happen."). The plaintiff's claim for damages in the present case likewise is predicated on an unresolved contingency—namely, the approval of Maude Buchman's Medicaid application by the department following a review of the requisite financial information. As a result, the court's finding that "[b]y failing to make the deadlines set by the [department], the defendant caused the plaintiff to lose the Medicaid money" is mere speculation and conjecture, which "are not allowable" in a breach of contract action. *Harper Machinery Co.* v. *Ryan-Unmack Co.*, supra, 364.

"Causation [is] a question of fact for the [fact finder] to determine"; *West Haven Sound Development Corp.* v. *West Haven*, supra, 201 Conn. 316; and, thus, is governed by the clearly erroneous standard of review. There is no evidence in the record before us indicating that, had the defendant complied with his obligations under the agreement, the plaintiff would have received any Medicaid payments. The court's finding to the contrary, therefore, is clearly erroneous. Because the plaintiff failed to establish that its loss of Medicaid payments naturally and directly resulted from the defendant's conduct, the award of $47,561.18 in damages is improper.

II

The defendant also claims that the court erred in finding in the plaintiff's favor on its promissory estoppel claim. For three distinct reasons, we agree.

First, the plaintiff has not alleged any promise by the defendant independent of that made as part of his entering into the agreement at the time of his mother's admission to the plaintiff's facility. As a result, the defendant is entitled to rely on the agreement as the final integration of his rights and duties with respect to that promise. See *Levine* v. *Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995).

Second, it is well settled that breach of contract and

promissory estoppel are inconsistent theories of recovery, as promissory estoppel is appropriate only when there is an absence of consideration to support a contract. See *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 88–89, 873 A.2d 929 (2005); *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 831, 3 A.3d 992 (2010). As this court has stated previously, "[a] duty of construction is placed upon the trial court whenever a party pleads inconsistent theories of recovery. . . . Although a party may plead, in good faith, inconsistent facts and theories, a court may not award a judgment on inconsistent facts and conclusions. . . . [I]t is the responsibility of the trial court to determine which of the inapposite sets of facts the party has proved, and then to render judgment accordingly." (Internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, supra, 831–32.

Third, we note that this court in certain circumstances has held that an inconsistent judgment is harmless, and does not constitute reversible error, where there is sufficient evidence to support a judgment under either theory of recovery. See, e.g., *300 State, LLC* v. *Hanafin*, 140 Conn. App. 327, 331–32, 59 A.3d 287 (2013) (judgment rendered after court trial in plaintiff's favor on "mutually exclusive" claims for breach of lease and quantum meruit was not reversible error "because the plaintiff produced sufficient evidence to support the judgment under either count"); *Pleines* v. *Franklin Construction Co.*, 30 Conn. App. 612, 616, 621 A.2d 759 (1993) (although "proof of a contract ordinarily precludes the remedy of unjust enrichment," judgment in favor of the plaintiff on both counts after court trial was harmless error because sufficient evidence was presented to support judgment under either theory); cf. *Harley* v. *Indian Spring Land Co.*, supra, 123 Conn. App. 831, 833 n.25 (considering, inter alia, whether to treat inconsistent judgment on promissory estoppel and breach of contract counts as harmless error, citing *Pleines*, and ultimately invoking supervisory powers to vacate judgment on promissory estoppel count due to unique procedural circumstances present in case). Even if we were to apply such an analysis to the present case, the plaintiff cannot prevail.

Proof of detrimental reliance necessarily entails evidence of injury to a plaintiff. See, e.g., *Stewart* v. *Cendant Mobility Services Corp.*, 267 Conn. 96, 113, 837 A.2d 736 (2003) ("[T]o rely, in the law of promissory estoppel, is not merely to do something in response to the inducement offered by the promise. There must be a cost to the promisee of doing it." [Internal quotation marks omitted.]); *W.* v. *W.*, 256 Conn. 657, 661, 779 A.2d 716 (2001) (promisee "must actually change his position or do something to his injury which he otherwise would not have done" [internal quotation marks omitted]); *Curcio* v. *Hartford Financial Services Group*, 472 F. Supp. 2d 239, 245 (D. Conn. 2007) (promissory estoppel

claim not viable "due to failure to allege sufficient detrimental reliance injury"). In ruling in favor of the plaintiff on its promissory estoppel claim, the court specifically found that the defendant's failure "to fulfill the terms of the agreement of the promise to [the plaintiff]" caused the plaintiff to lose the benefit of Medicaid payments.[10] As detailed in part I of this opinion, there is no evidentiary support in the record before us to substantiate that finding, as the plaintiff's receipt of any Medicaid payments was dependent on the department's approval of Maude Buchman's application. Accordingly, even if subject to a harmlessness analysis, the plaintiff has not met its burden in providing sufficient evidence to support a judgment under a promissory estoppel theory.

### III

Mindful that "sound principles of judicial restraint and judicial economy counsel [an appellate court] to resolve only those issues that are necessary to the proper determination of [an] appeal"; (internal quotation marks omitted) *Stuart* v. *Stuart*, 297 Conn. 26, 48, 996 A.2d 259 (2010); accord *State* v. *Carrasquillo*, 290 Conn. 209, 217 n.10, 962 A.2d 772 (2009) ("we will not entertain an appeal when the question presented is purely academic"); we ordinarily would not engage in an interpretation of certain disputed contractual provisions. In light of our conclusion in part I of this opinion that the plaintiff cannot prevail on its breach of contract claim because the record does not disclose any evidence indicating that the defendant's conduct caused the damages complained of,[11] interpretation of the disputed contractual provisions is a purely academic exercise. See *Kevin Roche-John Dinkeloo & Associates* v. *New Haven*, 205 Conn. 741, 748–49, 535 A.2d 1287 (1988) ("[a]s we find that the [defendant] did not offer appropriate evidence to establish damages for breach of contract, we need not address whether the allegations in the complaint were sufficient to establish the cause of action"). The concurrence nevertheless has determined to decide that issue. We thus, with great reluctance, join that academic exercise because the legal exposition set forth in the concurring opinion is contrary to several well reasoned decisions of our trial judges; see, e.g., *Cook Willow Health Center* v. *Andrien*, Superior Court, judicial district of New Britain, Docket No. CV-11-6008672 (September 28, 2012) (54 Conn. L. Rptr. 729); *Glastonbury Healthcare Center, Inc.* v. *Esposito*, Superior Court, judicial district of Hartford, Docket No. CV-01-0811032 (June 23, 2008) (45 Conn. L. Rptr. 671); as well as courts in other jurisdictions.[12]

### A

The concurrence concludes that the defendant cannot be held personally liable for breaching his obligations under the agreement.[13] Central to its analysis is the discussion of a body of federal law concerning

admissions practices that the parties to this appeal did not raise in any manner before the trial court, or in their appellate briefs and arguments before this court. Unfortunately, the narrative provided in the concurrence tells but half the story with respect to that body of federal law, which, in turn, leads it to mistakenly declare that "[w]hen an individual with legal access to a resident's income signs an admission agreement, he or she does so 'without incurring personal financial liability' . . . . 42 U.S.C. § 1396r (c) (5) (B) (ii)."

Section 1396r (c) (5) (A) of title 42 of the United States Code provides in relevant part that "[w]ith respect to admissions practices," a nursing facility must "(ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility . . . ." Similarly, General Statutes § 19a-550 (b) (26) provides in relevant part that a patient "shall not be required to give a third-party guarantee of payment to the facility as a condition of admission to, or continued stay in, the facility . . . ." As at least one court in this state previously has recognized, these provisions do not operate as an absolute ban on third party liability in the nursing home contract context—rather, they provide only that a third party guarantor/surety relationship cannot be made a condition of admission or continued stay. See *Cook Willow Health Center* v. *Andrien*, Superior Court, judicial district of New Britain, Docket No. CV-11-6008672 (July 21, 2011) (52 Conn. L. Rptr. 329, 330) (Section 1396r [c] [5] [A] [ii] of title 42 of the United States Code and General Statutes § 19a-550 [b] [26] "make it illegal for a nursing home such as the plaintiff here to refuse to admit a potential resident unless a third party guarantee of payment is made. Neither prohibits, however, third party guarantees in a nursing home contract under all circumstances. Moreover, courts have held that 42 U.S.C. § 1396r [c] [5] [A] [ii] does not prohibit voluntary third party guarantee contracts."). The agreement in the present case complies with the aforementioned Medicaid provisions, as § XVIII (2) expressly provides that the responsible party is not a guarantor for payment. See *Sunrise Healthcare Corp.* v. *Azarigian*, 76 Conn. App. 800, 808, 821 A.2d 835 (2003) (The contract at issue "unambiguously complies with . . . statutory requirements" where it provided, inter alia, that the "responsible party does not personally guarantee or serve as surety for payment as described in [the enumerated sections of the contract]. The responsible party agrees that his or her liability for the failure to perform any of the other obligations set forth in this agreement shall be determined in accordance with these [p]aragraphs." [Emphasis omitted; internal quotation marks omitted.]).

Courts across this country have held that a responsible party may voluntarily undertake contractual obligations in agreements such as the one at issue here. For

example, in *Podolsky* v. *First Healthcare Corp.*, 50 Cal. App. 4th 632, 646, 58 Cal. Rptr. 2d 89 (1996), the court explained that "[c]ontrary to appellant's position, we do not believe that the solicitation of otherwise voluntary third party guarantors violates or subverts the terms of applicable federal or state law in and of itself. Neither federal nor state law prohibits nursing homes from voluntarily obtaining the signature of a willing responsible party or third party guarantor when admitting nursing home residents. Instead, the applicable statutes make it unlawful to require third party guarantees as a condition of admission or continued residence in such facilities. . . . Had Congress intended to forbid third party guarantees under any circumstances, we presume it would have said so." (Citations omitted.) Likewise, the court in *Pioneer Ridge Nursing Facility Operations, L.L.C.* v. *Ermey*, 41 Kan. App. 2d 414, 419, 203 P.3d 4 (2009), concluded that although the trial court properly stated that the nursing facility could not require a third party guarantee as a condition of admission under federal law, its decision "fails to account for the fact that [the responsible party] *could have voluntarily made himself responsible* for any valid charges incurred by his mother." (Emphasis altered.)

Put simply, federal law prohibited the plaintiff from requiring, as a prerequisite to admission, that the defendant guarantee all of the debts incurred by his mother. See *Manor of Lake City, Inc.* v. *Hinners*, 548 N.W.2d 573, 575 n.1 (Iowa 1996) (agreement requiring responsible party "to be bound in his or her individual capacity by *all* of the terms and conditions of the [a]greement pertaining to the [r]esident" invalid under 42 U.S.C. § 1396r [c] [emphasis added]). At the same time, federal law did not proscribe the defendant's voluntary election to undertake certain specific contractual obligations, thereby exposing himself to liability for his failure to comply therewith. See *Podolsky* v. *First Healthcare Corp.*, supra, 50 Cal. App. 4th 646; *Cook Willow Health Center* v. *Andrien*, supra, 52 Conn. L. Rptr. 330. Accordingly, holding a responsible party personally liable in such instances does not run afoul of federal law. Proper interpretation of the agreement, therefore, centers on the language employed therein.

B

Notably, the defendant entered into the agreement as "the [r]esponsible [p]arty." That designation is something of a term of art in admission agreements, appearing routinely in such contracts. See, e.g., *Aaron Manor, Inc.* v. *Irving*, 307 Conn. 608, 57 A.3d 342 (2013); *Olympus Healthcare Group, Inc.* v. *Muller*, 88 Conn. App. 296, 870 A.2d 1091 (2005); *Sunrise Healthcare Corp.* v. *Azarigian*, supra, 76 Conn. App. 800; *Athena Holdings, LLC* v. *Marcus*, Superior Court, judicial district of Danbury, Docket No. CV-10-6003581 (April 23, 2013); *Orchard Grove Specialty Care Center, LLC* v.

*Clairwood*, Superior Court, judicial district of New London, Docket No. CV-11-6008580 (April 9, 2012); *Cook Willow Health Center* v. *Andrien*, supra, 52 Conn. L. Rptr. 329; *Torrington Health & Rehabilitation Center* v. *Cisowski*, Superior Court, judicial district of Litchfield, Docket No. CV-10-5007241 (April 29, 2011); *Whitney Manor Convalescent Center, Inc.* v. *Lumpkin*, Superior Court, judicial district of New Haven, Docket No. CV-06-5006153 (April 8, 2010) (49 Conn. L. Rptr. 653); *Spectrum Healthcare Derby, LLC* v. *Stevens*, Superior Court, judicial district of New Britain, Docket No. CV-08-5006913 (May 15, 2008) (45 Conn. L. Rptr. 612); *Bishop Wicke Health Center* v. *Gorel*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-06-5001424 (July 27, 2007) (43 Conn. L. Rptr. 626); *Haven Health Center of Litchfield Hills, LLC* v. *Parente*, Superior Court, judicial district of Litchfield, Docket No. CV-03-0091743 (January 8, 2007) (42 Conn. L. Rptr. 583); *Saybrook Convalescent Hospital, Inc.* v. *Klevecz*, Superior Court, judicial district of New London, Docket No. CV-04-4001606 (October 12, 2006); *Alzheimer's Resource Center of Connecticut, Inc.* v. *Carlstrom*, Superior Court, judicial district of New Britain, Docket No. CV-04-4002045 (May 23, 2005).

In *Sturman* v. *Socha*, 191 Conn. 1, 11, 463 A.2d 527 (1983), our Supreme Court addressed a claim that the term "responsible party," as used in admission agreements, was ambiguous. In that case, the plaintiff nursing facility brought an action against the defendant pursuant to a contract between the parties for an unpaid bill for services rendered to the defendant's father. Id., 2. Although the defendant signed the admission agreement as the "responsible party"; id., 4; he argued on appeal that "he is not personally liable on the admission agreement which he signed with the nursing home. He argues that the words 'Responsible Party,' which appear in the admission agreement immediately below his signature, are ambiguous with regard to his personal liability on the agreement." Id., 9. Our Supreme court disagreed, stating in relevant part: "From an examination of the admission agreement between the parties, it is clear that the words 'responsible' and 'responsible party' as they describe the defendant in the context of this contract should be given their natural and ordinary meaning; that being so, the defendant is liable for and legally accountable or answerable for the discharge of the duties and obligations which he had clearly undertaken upon signing the instrument. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. . . . Therefore, in construing the contract as a whole . . . we agree with the trial judge that the admission agreement in this case

unambiguously placed the defendant in a position of personal liability for the duties and obligations specified therein." (Citations omitted; internal quotation marks omitted.) Id., 11–12. Perhaps mindful of *Sturman*, the defendant in this appeal has not claimed that the agreement, or the term "responsible party," specifically, is ambiguous, vague or misleading.

We also note that, in *Sunrise Healthcare Corp.* v. *Azarigian*, supra, 76 Conn. App. 800, this court rejected a claim that a responsible party as to an admission agreement is merely an agent of the resident. Although the defendant in that case had executed the agreement "both as [the resident's] power of attorney and as the 'responsible party' "; id., 812; the court distinguished those two capacities, stating: "The defendant clearly signed the contract as the 'responsible party.' In so doing, the defendant assumed the obligations of the 'responsible party' as set forth under the contract. These obligations extend well beyond the defendant's role" as the resident's agent. Id., 813.

C

With that context in mind, we turn to the disputed contractual provisions addressed by the concurring opinion. The defendant argues, and the concurrence agrees, that the language of the agreement does not permit him to be held personally liable for breaching certain specific contractual obligations that he voluntarily elected to undertake. We strongly disagree.

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review."[14] (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 183, 2 A.3d 873 (2010).

The defendant first contends that the language of the agreement clearly and unambiguously limits the responsible party's personal liability to the plaintiff, and, thus, that the court erred by awarding the plaintiff damages in a circumstance purportedly not authorized under the agreement's terms. According to the defendant, § IV (5) of the agreement sets forth the *only* circumstance under which the plaintiff could seek satisfaction from the responsible party's personal funds—where the responsible party has received a transfer of assets from the resident that results in the resident's ineligibility for Medicaid, and the responsible party is required to use those assets, or at least an equal amount of his own assets, to pay for the resident's care until the resident is determined eligible for Medicaid

assistance.[15] In all other circumstances, the defendant asserts, the responsible party's liability is limited by the first sentence of § XVIII (2) of the agreement, which provides that the responsible party "does not personally guarantee or serve as surety for payment as described in paragraphs II [payment], III [security deposits], and XIV [per diem rate]."

Reading the agreement as a whole, as we must, we cannot conclude that the responsible party's liability for a breach of the agreement is as limited as the defendant and the concurrence suggest. Section XVIII (1) provides that, in executing the agreement, the responsible party accepts a duty to "undertake faithfully *all* of the obligations of [the] agreement." (Emphasis added.) Although the first sentence of § XVIII (2) does establish that the responsible party is not a surety for payment as described in three enumerated sections of the agreement, the second sentence of the section explicitly leaves open the possibility that the responsible party can be found liable "for failure to perform *any of the other obligations* set forth in [the] agreement," and provides that such liability "shall be determined in accordance with the provisions of [the] agreement."[16] (Emphasis added.)

Section IV of the agreement sets forth the responsible party's obligations with respect to Medicaid assistance, "all" of which the defendant, as the responsible party, promised to "undertake faithfully" when he signed the contract. Specifically, he agreed to "provide all information that may be requested by the [department] in connection with the application [for Medicaid] in accordance with any deadlines established by the [d]epartment," and to "act promptly and expeditiously to establish and maintain [his mother's] eligibility for Medicaid assistance . . . ." These obligations are distinct from the obligations set forth in §§ II, III, and XIV of the agreement, and, in accordance with § XVIII (2) of the agreement, the defendant properly can be found liable for his failure to fulfill his duties.[17] Indeed, allowing the defendant to escape liability for his undisputed failure to satisfy the obligations set forth in § IV would be effectively to read these provisions out of the agreement, which cannot be the result under our case law requiring that all provisions of a contract be given meaning, and none be rendered superfluous.[18] See, e.g., *Assn. Resources, Inc.* v. *Wall*, supra, 298 Conn. 183.

Although the concurrence alleges that the plaintiff "seeks to hold [the defendant] liable for damages predicated on the resident's financial obligations," the facts of this case belie that assertion. Unlike *Sunrise Healthcare Corp.* v. *Azarigian*, supra, 76 Conn. App. 800, this is not a case in which the breach of contract and resulting litigation stem from a responsible party's failure to comply with a contractual obligation to use a resident's "assets for the payment of services." (Emphasis omit-

ted.) Id., 808. This case concerns the defendant's conceded breach of entirely separate provisions in the admission agreement regarding his duty to provide all requested information to the department and timely establish his mother's eligibility for Medicaid following the exhaustion of her financial assets. Count one of the plaintiff's complaint specifically alleges that the defendant breached the agreement, inter alia, by his failure "to provide the [department] with the information they sought within the time frames they sought it in order to review [his mother's] Medicaid application . . . ." Throughout this litigation, the plaintiff has sought to obtain damages stemming from the defendant's breach of that contractual obligation pursuant to § XVIII (2), which provides in relevant part that the defendant's liability for his failure to perform that obligation "shall be determined in accordance with the provisions of this agreement." Significantly, the parties at trial entered into a written stipulation that the department would have paid the plaintiff's facility $47,561.18 if it had granted Medicaid benefits to the defendant's mother. At the time of her death, however, the defendant's mother had an unpaid balance of $99,820.78 due to the facility. Thus, the plaintiff's alleged loss is not predicated on the financial obligations of the defendant's mother. Rather, it is predicated entirely on the loss allegedly incurred as a result of the defendant breaching his contractual obligation to provide all requested information to the department and timely establish his mother's eligibility for Medicaid.

In conflating the concepts of "guarantor" and "responsible party" liability, the concurrence reasons that a responsible party who breaches a specific contractual obligation that it voluntarily agreed to perform and which allegedly resulted in the nonpayment of tens of thousands of dollars in nursing care costs nevertheless is *immune from liability*. We disagree. The trial court found that the defendant breached his contractual obligations to comply with all requests from the department, and to act promptly and expeditiously to establish and maintain his mother's eligibility for Medicaid assistance. The defendant does not challenge that finding in this appeal. In our view, finding the defendant liable for breach of contract for failing to perform obligations he voluntarily undertook as a signatory to the agreement is not the same as making him a guarantor for his mother's care under *all* circumstances. By way of example, we agree that the defendant could not be held personally responsible for paying for his mother's care if he had furnished all of the necessary documentation, but the department nevertheless denied Medicaid benefits, because in that case, the defendant would have satisfied his obligations under the agreement, and there would have been no breach. Moreover, § XVIII (2) of the agreement expressly leaves open the possibility that the responsible party can be held liable for

failure to perform *any* obligations other than the payment obligations set forth in §§ II, III, and XIV. To allow the defendant to evade liability for his voluntary contractual obligation under a provision that does not specify a remedy effectively rewrites the parties' agreement and removes all references to the responsible party's duties except for § IV (5), in contravention of the fundamental principle of contract law that all provisions of a contract must be given effect. See *Connecticut National Bank* v. *Rehab Associates*, 300 Conn. 314, 322, 12 A.3d 995 (2011) (reviewing court must "give effect to *all* the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous" [emphasis added; internal quotation marks omitted]).

Accordingly, we disagree with the concurrence that the court improperly concluded that the defendant could be held personally liable for breaching specific contractual obligations that he voluntarily elected to undertake.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion BEAR, J., concurred.

[1] See *National Market Share, Inc.* v. *Sterling National Bank*, 392 F.3d 520, 525 (2d Cir. (2004) ("[c]ausation is an essential element of damages in a breach of contract action"); accord 3 Restatement (Second), Contracts § 346 (1981) (to prevail in breach of contract action, party must prove, in addition to amount of loss sustained, that defendant's breach of contract "caused" loss).

[2] In addition, § XVIII of the agreement, titled "Obligations of the Parties," states: "(1) The execution of this agreement will constitute an acceptance [on] the part of the [f]acility, the [r]esident and the [r]esponsible [p]arty to undertake faithfully all of the obligations of this agreement. (2) The [r]esponsible [p]arty does not personally guarantee or serve as surety for payment as described in paragraphs II, III, and XIV. Responsible [p]arty liability for failure to perform any of the other obligations set forth in this agreement shall be determined in accordance with the provisions of this agreement."

[3] The Probate Court for the district of Granby appointed the defendant as conservator of his mother's estate on May 22, 2007. On September 24, 2008, the court-appointed attorney for the defendant's mother moved before the Probate Court for the defendant's removal as conservator, asserting that the defendant had (1) failed to file an inventory with the Probate Court in the time allowed by law; (2) failed to continue to pay the premium for the court-ordered surety bond; (3) failed to respond to inquiries from the court and other parties in interest, and failed to attend a status conference requested by the court; and (4) failed to "successfully perform his duties" as conservator. On September 30, 2009, the Probate Court issued a memorandum regarding a status conference held on September 15, 2009, regarding the $99,820.78 balance owed to the plaintiff for the care of the defendant's mother and the allegation that Medicaid assistance "has been or will be denied due to lack of cooperation by the [defendant]." In the memorandum, the court decreed, inter alia, that the defendant's $10,000 surety bond was to be paid to the plaintiff.

The defendant contends on appeal, as he did before the trial court, that the plaintiff's failure to name him in his capacity as conservator as a party to the action precluded the court from allowing the plaintiff to recover against him for actions/omissions committed as conservator. We agree with the trial court that the defendant's appointment as conservator did not relieve him of personal liability as the "responsible party" under the terms of the agreement, and, accordingly, we reject this argument.

[4] Although the parties stipulated that the department would have paid the

facility $47,561.18 if it had granted Medicaid benefits to the defendant's mother, both the oral decision and written judgment of the court awarded the plaintiff $47,561.15. Neither party has taken issue with this $.03 discrepancy in the judgment.

[5] To be clear, it is undisputed that the defendant breached the agreement. The court specifically found that the defendant failed to comply with his contractual obligations, and the defendant does not contest that finding in this appeal.

[6] This claim properly was preserved at trial. In moving for summary judgment at the close of the plaintiff's case-in-chief, the defendant claimed, inter alia, that "the plaintiff hasn't proved causation in this matter. . . . There has been absolutely no evidence, not one scintilla of evidence that if [the defendant] had provided this [financial] information to the [department] that Maude Buchman would have qualified for Medicaid, and that is the key issue before the court. If [the court] decides that [the defendant] is somehow, as the responsible party, liable, would she have qualified for Medicaid, we haven't heard from anybody. The witness from the [department], himself, has said . . . to determine whether she qualified for Medicaid, whether she would have received it, they would have needed the information, financial information. Counsel has asked . . . many questions of [the defendant], whether he provided documentation pursuant to subpoenas, whether he was questioned at deposition; counsel had access to this information and could have retained an expert to review all of Maude Buchman's financial history and testify whether she actually would [have] qualified for [Medicaid]. If we're to assume that [the defendant] breached this contract, and we're putting the plaintiff in as good a position as it would [have] been [in] had he not breached, then we've got Maude Buchman sitting, waiting to be— to be determined whether she is—whether she would be granted Medicaid. We have no evidence to that point. And the defendant has failed to prove causation in the matter." The defendant renewed that claim in both his motion for articulation and his motion to reargue, which the court summarily denied.

[7] We note that some jurisdictions have recognized a "but-for" causation requirement with respect to breach of contract actions. See *Barkan* v. *Dunkin' Donuts, Inc.*, 627 F.3d 34, 40 (1st Cir. 2010) (holding that to succeed on breach of contract claim under Rhode Island law, plaintiff must prove defendant's breach was but-for cause of damages); *Citizens Federal Bank* v. *United States*, 474 F.3d 1314, 1319 (Fed. Cir. 2007) (requiring injured party to prove but-for causation in lost profits breach of contract cases is one approach taken by courts in Federal Circuit); *Point Productions A.G.* v. *Sony Music Entertainment, Inc.*, 215 F. Supp. 2d 336, 341 (S.D.N.Y. 2002) (in breach of contract action, "[p]laintiff cannot recover if it would have suffered the harm regardless of defendant's actions").

[8] The written stipulation entered into by the parties and admitted into evidence on October 13, 2011, states: "The parties agree and stipulate as follows: (1) Maude Buchman was admitted to [the plaintiff's facility] on November 15, 2006, with a diagnosis of dementia. [The defendant] signed the Admission Agreement as Responsible Party. Maude Buchman remained a resident of [the plaintiff's facility] until her death on May 11, 2009. Had the [department] granted Medicaid benefits to Maude Buchman, [the plaintiff's facility] would have been paid $47,561.18 from the [department]. (2) The Admission Agreement can be admitted into evidence as a full exhibit."

[9] In its oral decision, the court found both that the defendant's breach of contract caused the plaintiff to lose "its ability to receive $47,561.18 in Medicaid assistance" and that "[b]y failing to make the deadlines set by the [department], the defendant caused the plaintiff to lose the Medicaid money."

[10] *US Ecology, Inc.* v. *State*, 129 Cal. App. 4th 887, 28 Cal. Rptr. 3d 894 (2005), discussed the causation requirement in the context of damages for promissory estoppel. The court in that case noted that the Restatement (Second) of Contracts "considers a promissory estoppel claim as equivalent to one for breach of contract: 'A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate.'" (Emphasis omitted.) Id., 903, citing 1 Restatement (Second), Contracts § 90, comment (d) (1981). The court then observed that "except for its equitable nature and the lack of a necessity for consideration, promissory estoppel claims are akin to contract actions, including the recovery of damages and the proof necessary to recover them." Id.; cf. *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980) (promissory estoppel originated as "[t]he development of *liability in contract* for action induced by reliance upon a promise, despite the absence of common-law

consideration normally required to bind a promisor" [emphasis added]). As a result, the court concluded that "because promissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract, it is logical and proper to require that any claimed damages be caused by a defendant's breach of the agreement. Because promissory estoppel is viewed as an 'informal contract,' causation must be required as an element that a plaintiff must prove, just as in ordinary contract actions." *US Ecology, Inc.* v. *State*, supra, 904; accord *Rhode Island Hospital Trust National Bank* v. *Varadian*, 419 Mass. 841, 850, 647 N.E.2d 1174 (1995) (promissory estoppel action "is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration"). The court further emphasized that "[a] party allowed in equity to pursue a claim for promissory estoppel because it has no enforceable contract should not be placed in a position better than one with an enforceable contract." *US Ecology, Inc.* v. *State*, supra, 905. We agree with that reasoning.

[11] At no point has the concurrence ever expressed any disagreement with that legal conclusion.

[12] To be clear, the discussion contained in part III of this opinion is dictum. "Dictum is generally defined as [a]n expression in an opinion which is not necessary to support the decision reached by the court. . . . A statement in an opinion with respect to a matter which is not an issue necessary for decision. . . . Our Supreme Court has instructed that dicta have no precedential value." (Citation omitted; internal quotation marks omitted.) *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 653–54, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013). Having concluded that the plaintiff cannot prevail in this action because evidence of the requisite causal link for an award of damages is lacking—a conclusion with which the concurrence does not quarrel—interpretation of the disputed contractual provisions in this case is not necessary to support the decision reached by the court.

[13] It is undisputed that the defendant breached the agreement with the plaintiff. The plaintiff's complaint contained such allegations and the court, as finder of fact, specifically found that the defendant failed to comply with his contractual obligations. The defendant does not contest that finding in this appeal.

[14] Neither party has asserted that the agreement is ambiguous.

[15] We are not persuaded by the defendant's contention that § IV (5) of the agreement sets forth the only delineated remedy contemplating the responsible party's personal liability. Indeed, that section provides only that, "[*i*]*f* the [r]esponsible [p]arty has received a transfer of assets" from the resident that renders the resident ineligible for Medicaid assistance, the responsible party agrees to use the transferred assets, or an equal amount of his own assets, for the cost of the resident's care. (Emphasis added.) The agreement contains no promise by the responsible party that such a transfer will not occur, and accordingly, the reference to payment from the responsible party's personal assets is better construed as another duty of the responsible party than as a remedy for some unspecified breach of the agreement.

As we read it, the concurring opinion suggests that the scope of the defendant's liability, and hence any ensuing remedies, must be expressly provided for in the agreement. See concurring opinion and footnote 15 of concurring opinion ("the responsible party was liable only for using the resident's funds for purposes other than payment to the facility"; "[t]he agreement obligated the responsible party to pay the plaintiff only to the extent that it had access and control of the resident's resources" [emphasis omitted]). Significantly, however, § XVIII (2) does not say that responsible party liability shall be determined as "*set forth*" in the other provisions of the agreement; it simply says that it shall be determined "*in accordance with*" the other provisions of the agreement. (Emphasis added.) In our view, that diction plainly leaves open the possibility that liability for a breach must be determined by looking at the language of the provision breached and then applying well established principles of contract law and expectation damages to place the plaintiff in the position that it would have been in had the responsible party performed as promised. Although § XVIII (2) does not specify its own remedies, contract law imposes no such requirement. See, e.g., *International Marine Holdings, Inc.* v. *Stauff*, 44 Conn. App. 664, 676, 691 A.2d 1117 (1997) (The court noted that parties to a contract "may agree on the remedies available in the event of a breach . . . . If the lan-

guage of the agreement discloses that the parties intended to limit the remedies to those stated, the agreement will be enforced and the party will be limited to the exclusive remedies outlined in the agreement. . . . A contract will not be construed to limit remedial rights unless there is a clear intention that the enumerated remedies are exclusive," and the court concluded that there was no intention to limit the available remedies where the plaintiff's proposed reading of the agreement required a "bizarre result . . . ." [Citation omitted; internal quotation marks omitted.]). In the present case, it would be a bizarre result indeed if § XVIII (2) provides for the imposition of remedies "in accordance with" the other provisions of the agreement, yet none of those other provisions provide a remedy.

*Sunrise Healthcare Corp.* v. *Azarigian*, supra, 76 Conn. App. 800, on which the concurrence relies, is instructive in this regard. That case concerned a contract with provisions nearly identical to those in the agreement at issue here. On appeal, this court found that the language of the agreement did not violate the Medicaid statutes. Further, we held that the responsible party was properly found liable for transferring the resident's assets—over which she had control—instead of using them to pay the facility, which was specifically prohibited under the agreement. Id., 808. Notably, it does not appear that the provision at issue in *Sunrise Healthcare Corp.* set forth a specific remedy requiring the responsible party to repay the amount of any improperly transferred assets, yet that was the remedy imposed by the trial court and affirmed by this court. The application of general principles of contract law to furnish an appropriate remedy in that case undermines the defendant's argument that he can be found liable only if the parties contracted for a specific remedy in the event of a breach of one of the agreement's provisions.

[16] To be clear, § XVIII (2) provides simply that liability for failure to perform any of the obligations in the agreement other than those set forth in §§ II, III, and XIV "shall be determined in accordance with the provisions of this agreement." We do not read this language as requiring that a specific remedy be set forth in the agreement; rather, the responsible party's liability can be determined "in accordance with" the agreement by examining the provision breached and determining the remedy that would put the facility in the position it would have been in had the responsible party performed as promised. See, e.g., *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, supra, 234 Conn. 32 (purpose of contract damages to place injured party in position he would have been in had contract been performed). Indeed, reading § XVIII (2) in the manner proposed by the concurrence would render the provision superfluous because no section of the agreement can properly be read to set forth a specific remedy in the event of a breach by the responsible party.

[17] We note that *Aaron Manor, Inc.* v. *Irving*, 126 Conn. App. 646, 654–55, 12 A.3d 584 (2011), rev'd in part, 307 Conn. 608, 57 A.3d 342 (2013), patently is distinguishable from the present case. *Aaron Manor, Inc.*, concerned the alleged breach of a provision in the admission agreement providing: "[i]f the responsible party has control of or access to the patient/resident's income and/or assets, the responsible party agrees that these funds shall be used for the patient/resident's welfare, including but not limited to making prompt payment for care and services rendered to the patient/resident in accordance with the terms of this agreement." (Emphasis omitted; internal quotation marks omitted.) Id., 654. The court ultimately concluded that the responsible party was not liable for a breach of that specific provision because she did not have the requisite control over, or access to, the funds as contemplated by the agreement. Id., 654–55. *Sunrise Healthcare Corp.* v. *Azarigian*, supra, 76 Conn. App. 800, likewise concerned the same provision of the relevant admission agreement; this court held that the responsible party properly was held liable where she *did* have control over the resident's assets. Id., 808–10. By contrast, in the present case, the breach at issue stems from the entirely separate provisions in the admission agreement regarding the responsible party's duty to provide all requested information to the department and timely establish his mother's eligibility for Medicaid. The responsible party's access to or control over the resident's funds is irrelevant to his liability for breach of these contractual duties.

Although this specific issue has not been reached previously by this court, we note that the defendant's principal contention, championed by the concurring opinion, has been flatly and repeatedly rejected in our Superior Court. In *Cook Willow Health Center* v. *Andrien*, supra, 54 Conn. L. Rptr. 729, the plaintiff nursing home brought an action for breach of contract against the defendant, who had signed an admission agreement as the responsible party. The defendant filed a special defense alleging that the agreement was "void and unenforceable pursuant to 42 U.S.C. § 1396r (c) (5) (A) (ii) and General Statutes § 19a-550 (b) (26) because the agreement makes the

defendant personally liable for the cost of [her mother's] nursing care." Id., 730. The court granted the plaintiff's motion to strike that defense, reasoning as follows: "[The defendant claims that the agreement] contains a personal guarantee. The plaintiff argues that the agreement does not contain a personal guarantee, and furthermore, the complaint is one based upon a breach of contract rather than a personal guarantee. [Section 1396r (c) (5) (A) and § 19a-550 (b)] make it illegal for a nursing home to refuse to admit a potential resident unless a third party guarantee of payment is made.

"Section IV.2. of the agreement states: 'The responsible party does not personally guarantee or serve as surety for payment for the care provided to the resident by the facility. The responsible party acknowledges and agrees that he or she wants the resident to be admitted to and to receive the care and services provided by the facility; that he or she is making certain promises in this agreement; and that the facility is admitting the resident and providing care and services in reliance upon these promises. The responsible party is personally liable for any damage incurred by the facility due to the responsible party's failure to fulfill these promises.' This provision of the agreement clearly indicates that the defendant as the responsible party is not guaranteeing the payment. Her failure to meet her obligations would only indicate that she breached the agreement, resulting in damages to the plaintiff because of nonpayment for her mother's care that would have been available through Medicaid had the defendant acted properly. . . .

"The defendant relies on *Sunrise Healthcare Corp.* v. *Azarigian*, [supra, 76 Conn. App. 800], for the proposition that the use of the term 'personally liable' in a nursing home admission contract per se violates the federal and state statutes. In that case, the Appellate Court held that the contract before it did not violate 42 U.S.C. § 1396r because (1) it had a provision expressly prohibiting personal liability of the responsible party for the payments made from the resident's account; and (2) it merely obligated the responsible party to use the assets of the resident to make the payments. Id., 808. A contract unambiguously complies with the statutory requirements in the Medicaid Act, 42 U.S.C. § 1396r (c), when, '[f]irst, it expressly prohibits personal liability on the part of the defendant for payments made to the plaintiff from [the resident's] account,' and second, 'the contract obligates the defendant to use . . . [the resident's] assets for the payment of services.' Id. The Appellate Court did not hold that the voluntary making of a third party guarantee was illegal. The agreement does not contain a personal guarantee. The agreement does set forth a scenario in which the responsible party would be liable for any costs of care and services for the resident incurred should the resident make a transfer rendering him/her ineligible for Medicaid payment or assistance." (Footnote omitted.) *Cook Willow Health Center* v. *Andrien*, supra, 54 Conn. L. Rptr. 730–31. Accordingly, the court concluded that "[i]n this case, the defendant assumed the responsibility of admitting her mother to the plaintiff's facility and agreed to serve as the primary contact for her care. The defendant undertook certain obligations under the agreement, which the plaintiff alleges she failed to perform. The plaintiff's complaint is not based upon a breach of a promise to answer for the debt of another, but rather a breach of contract." Id., 731.

Even more directly on point is *Glastonbury Healthcare Center, Inc.* v. *Esposito*, supra, 45 Conn. L. Rptr. 671. In *Glastonbury Healthcare Center, Inc.*, the plaintiff care facility brought an action against the defendant to recover expenses incurred for the care of his mother after the department denied his mother's Medicaid application " 'due to the lack of sufficient information' " regarding his mother's assets. Id., 673. As in the present case, the admission agreement at issue in *Glastonbury Healthcare Center, Inc.*, "[required] the responsible party to provide all information that may be requested by [the department] in connection with an application for Medicaid and to promptly and expeditiously establish and maintain eligibility for [Medicaid assistance] . . . ." Id., 672. Though the defendant in *Glastonbury Healthcare Center, Inc.*, signed the agreement only as his mother's representative, and not as the responsible party, the court nevertheless found that the defendant had entered into an oral contract with the facility to undertake the obligations of the responsible party because the facility informed him that he was the responsible party at the time he signed the agreement and informed him of his duties as the responsible party—including to establish his mother's eligibility for Medicaid and provide all information requested by the department—and the defendant did not object. Id., 672–73. The court then found that the defendant violated this contract by failing to provide the department with the requested information regarding his mother's assets and failing to act promptly to establish and maintain her Medicaid eligibility. Id., 674. The court stated explicitly that the defendant's "liability . . . in breach of contract is not based upon the promise to answer for the debt of [his mother], *but rather for his failure to meet his entirely separate*

*responsibility as a responsible party,*" and awarded the plaintiff damages resulting from the defendant's breach. (Emphasis added.) Id. We find the reasoning of *Andrien* and *Glastonbury Healthcare Center, Inc.*, to be highly persuasive and instructive.

[18] To the extent that the defendant argues that he should not be liable for his failure to perform his obligations under § IV of the agreement because the plaintiff could have, or should have, filed a Medicaid application on behalf of his mother, we are not persuaded by that assertion. Under the plain terms of the agreement, it was the defendant as the responsible party— and not the plaintiff facility—who undertook the contractual obligation to apply for and establish the resident's eligibility for Medicaid assistance. Moreover, the record does not establish that the plaintiff had access to the confidential financial information necessary to complete a Medicaid application for the defendant's mother.