*Central Vermont Medical Center, Inc. v. Rich*, No. 461-8-14 Wncv (Teachout, J., July 15, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 461-8-14 Wncv** |

**CENTRAL VERMONT MEDICAL CENTER, INC.
D/B/A WOODRIDGE REHABILITATION and
NURSING f/k/a WOODRIDGE NURSING HOME**
    **Plaintiff**

    **v.**

**FREDERICK RICH and ROSALIND RICH**
    **Defendants**

### DECISION
### Woodridge's Motion for Summary Judgment

Plaintiff Central Vermont Medical Center operates Woodridge Rehabilitation and Nursing (Woodridge), a nursing home at which Defendant Frederick Rich resides. When Mr. Rich initially took up residence at Woodridge, Woodridge was compensated by Medicare. When Medicare benefits ran out, the Riches applied for Medicaid. They refused to pay Woodridge out of their private funds until their Medicaid application was finally determined. When the complaint in this case was filed, their original Medicaid application had been denied. They continued to refuse to pay Woodridge, however, based on their belief that their Medicaid application had been denied incorrectly. They appealed the denial and filed a second Medicaid application.

Woodridge then filed the motion for summary judgment currently under consideration. It sought judgment to the effect that the Riches have no contractual authority to withhold payment on the hope that Medicaid would come through in the future. It sought to impose personal liability for the entire accrued debt, plus interest and attorney fees, on both Mr. Rich and Ms. Rich.

Following the initial round of briefing, much of what the Riches predicted occurred. Their *second* Medicaid application was granted retroactive to January 2014. Woodridge received reimbursement at the Medicaid rate. The Riches paid their corresponding patient share. According to the Riches, four months of Medicaid benefits remain in dispute. Woodridge now claims entitlement to the unpaid periods of Mr. Rich's residence and claims that the Riches owe at the higher private pay rate even for periods in which Medicaid now has reimbursed it.

There are three issues in controversy at this point: (1) how much is currently owed to Woodridge; (2) whether Ms. Rich is *personally* liable for the accrued debt; and (3) the amount of Woodridge's reasonable attorney fees and costs.

*The Admission Agreement*

The parties' rights and obligations are substantially set forth in the Admission Agreement. The Agreement provides notice that Medicare may provide short-term funding for Mr. Rich's stay at Woodridge. It also provides notice that Medicaid may be available:

> If you are not eligible for Medicare to pay for your stay and you do not have adequate funds to cover the cost of your stay, you may be eligible for Medicaid. Medicaid is administered by the Economic Services Division of the Vermont Department for Children and Families. The Medicaid application process has two steps. The first is a review to determine if a nursing home is the appropriate setting to receive care. The second is a financial review. The Woodridge Social Workers can help you apply for Medicaid. Please refer to Attachment C, **Help Paying Your Bill - Medicaid Assistance and Your Rights** [expressly a part of the Agreement but not in the record], for further important information about Medicaid.

> When Medicaid is helping to pay the cost of your stay at Woodridge, you pay a monthly amount, called "patient share," toward your care. This amount is determined by the Medicaid program. This amount should be paid to Woodridge by the 10th of each month. Medicaid covers the cost of all the services mentioned above. It also pays premiums, deductibles and co-pays of your Medicare D pharmacy plan. Medicaid does not cover the extra cost of a private room. If you choose to have a private room, you may be charged $8 a day.

The Agreement provides instructions if private insurance is available. It then describes Mr. Rich's "private pay" obligation:

> If you are not eligible for Medicare or Medicaid coverage for your stay at Woodridge, and you do not have any other insurance, you will need to pay using your private funds. You will be charged $292-$300 a day with an extra charge for your medications and any other ancillary charges. You will be billed at the beginning of each month, and we will refund any unused portion of your advance payments.

The Agreement indicates the date when service began, that payment on that date was through Medicare, and further provides:

> We will provide you an itemized statement of charges that you must pay every month. You agree to pay the account monthly on or before the tenth of every month.

> Payment is overdue thirty (30) days after the due date. A late charge at a monthly interest rate of 1% is charged on past due accounts.

Woodridge is entitled to reasonable attorneys fees and costs in the event it takes action to collect any amounts due hereunder.

*How much the Riches owe*

The Riches claim they had a right to withhold all payments to Woodridge while they sorted out their Medicaid dispute. They point out that the Agreement notes that one might be "eligible" for Medicaid benefits and that if Medicaid is paying for the stay at the nursing home, then the nursing home is required to accept payment at the Medicaid rate as payment in full. They argue that Mr. Rich's eligibility for Medicaid, even though his application was denied or denied to some extent, insulates them from *current* liability. In other words, they argue that they were not required to pay Woodridge anything—but that Woodridge has a continuing obligation to provide services—until their Medicaid dispute is finally resolved and the amount of the patient share specified.

The Riches cite no legal authority for this argument and the court has found none. There is no right to refuse to pay privately based on the hope that Medicaid benefits will become available in the future. The terms of the Agreement are clear. To the extent that Mr. Rich has no alternative source of funding, whether insurance or a public benefit program, to pay for his stay at Woodridge, he is required to pay out of pocket at the private pay rate.

While the Agreement refers to one's *eligibility* for Medicaid, eligibility is not the same as a hope that one's application might be granted in the future or that an appeal from the denial of an application will be granted. In the Medicaid context, "[e]ligible means the department [of children and families] has decided the individual meets all the eligibility criteria specific to the coverage group such as age, residency, and income level." Vt. Admin. Code 12-3-211:4110. Mr. Rich is not eligible for Medicaid benefits until his application for those benefits has been approved. While this definition of *eligible* does not appear in the Agreement itself, it would be manifestly unreasonable to read the Agreement any differently.

The Agreement plainly contemplates that Woodridge will be paid on a monthly basis out of private funds if it is not being paid through insurance or a public benefit program. The resident has no right to unilaterally choose not to pay or to delay payment due anticipated circumstances in the future. Mr. Rich was obliged to pay on a monthly basis at the private pay rate. Having not done so, he incurred an obligation to Woodridge to pay each month, as well as an obligation to pay monthly interest of 1% on any monthly payment not made within 30 days of the due date. Thus, Mr. Rich did incur an obligation to Woodridge at the private pay rate on an ongoing basis prior to a final Medicaid determination.

At this point, Woodridge has been compensated by Medicaid and Mr. Rich's patient share for a large portion—but not all—of the time that was in dispute. Woodridge, however, continues to claim that the Riches owe at the higher private pay rate for the entire period. This is incorrect. The Agreement is clear that Mr. Rich must pay at the private pay rate if Medicaid is not available. If Medicaid is available, Woodridge has the right only to compensation at the lower Medicaid rate. Nothing in the Agreement entitles Woodridge to the windfall it seeks to be

3

awarded and keep in this case: the difference between the Medicaid rate and the private pay rate merely because the Medicaid application was granted retroactively and, in the interim, Woodridge had billed at the private pay rate.

The Agreement specifically provides that when a patient pays at the beginning of a month at the private pay rate, which the patient is required to do, "we will refund any unused portion of your advance payments." Thus, when Medicaid made its retroactive determination of eligibility and reimbursed at the Medicaid rate, that changed the amount of the charge for each covered month to the patient share amount. However, Mr. Rich is not relieved of the interest charges that accrued on the private pay amount when he should have been paying the private rate but did not.

Thus, the correct amount due is to be calculated by computing the amount due at the private pay rate, plus accrued interest, to the date on which there was a reimbursement, at which point in time Mr. Rich should be credited with the reimbursement amount plus a reduction for the difference between the private pay rate and the patient share rate. This puts Woodridge in the position it should have been in if Mr. Rich had met his contractual obligation on a current ongoing basis: Woodridge is compensated at the correct Medicaid rate, but also gets the benefit of the interest it accrued on amounts that were unpaid on a current basis, compensating it for the loss of cash payments during the period it provided services without the income to meet the cost of providing those services.

The parties are requested to exchange information on computation of the amount due under this ruling. If they are unable to agree on the amount owed, the matter will be determined at an accounting.

*Ms. Rich's personal liability*

Woodridge argues that Ms. Rich has personal liability for the entire cost of services provided to her husband because she is his "Resident's Representative" (Representative) and has refused to pay his bills.[1] Ms. Rich signed the Agreement as Mr. Rich's Representative. The Agreement describes that the Representative will sign the Agreement on the patient's behalf, as Ms. Rich did, if the patient is unable to. The Agreement is clear that the Representative is a party to the contract and that being a Representative *does not* make one the guarantor of the patient's obligation to pay Woodridge.

Other than signing the Agreement for her husband, Ms. Rich's sole obligation under the Agreement appears where she signed as his Representative: "I, *Rosalind joint on account* [italicized text in handwriting], having legal right and access to the Resident's income and/or resources available to pay for facility care, hereby agree to provide Facility payment from the Resident's income and/or resources."

The Agreement is clear that Mr. Rich has liability for paying Woodridge. Ms. Rich is not his guarantor. Ms. Rich's obligation is limited to accessing whatever funds Mr. Rich has

---

[1] Presumably, Woodridge intends that Ms. Rich is *jointly* liable, with her husband, for the same debt, the unpaid bills.

4

available for paying Woodridge and sending those funds, as billed, to Woodridge. Her contractual duty is clerical. Woodridge argues, however, that Ms. Rich's refusal to pay is a breach of the Agreement and makes her personally liable.

The breach does not automatically make her personally liable for the entire debt. There is no allegation that Ms. Rich misappropriated any of the funds that Mr. Rich has available to pay Woodridge or otherwise has attempted, on Mr. Rich's behalf, to avoid the liability to Woodridge. What resources Mr. Rich has had available to pay Woodridge, he presumably still has available to pay Woodridge. She simply has failed to write checks as promised. This breach may be the immediate cause of this collection action, but it does not shift the whole liability to Ms. Rich and suddenly make her assets available to satisfy Mr. Rich's liability. Doing so would put her in the position of being a guarantor, which she is not.

Woodridge relies principally on a Connecticut case for the proposition that Ms. Rich should have personal liability for Mr. Rich's debt in this case. *Sunrise Healthcare Corp. v. Azarigian*, 821 A.2d 835 (Conn. App. Ct. 2003). The contractual terms at issue in that case were different from those in this case. More importantly, the representative's liability in *Azarigian* arose out of the representative's unauthorized and wrongful use of the patient's resources, which drained them and made them unavailable to the nursing home. *Id*. at 840. There is no analogous circumstance in this case: there is no showing that Ms. Rich's failure to pay Woodridge has had any effect on the amount of Mr. Rich's resources available to Woodridge or that she has abused her position as trustee over Mr. Rich's funds.

Woodridge also cites *Meadowbrook Center, Inc. v. Buchman*, 90 A.3d 219, 234 (Conn. Ct. App. 2014) for the proposition that "[c]ourts across this country have held that a responsible party may voluntarily undertake contractual obligations in agreements such as the one at issue here." Medicaid statutes and regulations do not permit a nursing home to require a resident to have any third party guarantee of payment, whether from a resident representative or anyone else, at the time of admission or thereafter. 42 U.S.C. § 1396r(c)(5)(A)(ii), (c)(5)(B)(ii); 42 C.F.R. § 483.12(d)(2). The cited portion of *Buchman* stands for the unremarkable proposition that while the facility may not *require* a third party guarantee, a *voluntary* third party guarantee is permissible. *Buchman* is irrelevant to this case. The terms of the Agreement do not make Ms. Rich a guarantor at all.

There are no facts showing that Ms. Rich diverted funds that otherwise were available and should have been used to pay Woodridge to some other purpose. Doing so would have been in violation of her contractual obligation to Woodridge under the Agreement, but there are no facts showing that she did so. There is no basis for Ms. Rich's personal liability on the debt.

*Attorney fees*

Woodridge is entitled to an award of attorney fees in this case because the Agreement so provides. Counsel for Woodridge has submitted an affidavit reporting only hourly rates and the total amount billed to Woodridge. This is insufficient for the court to evaluate reasonableness. A request for attorney fees must be supported by detailed billing records and other evidence supporting reasonableness within the contemplation of the lodestar fee calculation method. See,

e.g., *Walsh v. Cluba*, 2015 VT 2, ¶ 15.

Woodridge may renew its request for fees, accompanied by detailed billing records, within 15 days of the determination (whether by agreement or as a result of court hearing) of the amount due Woodridge. Any objection should be filed within 15 days thereafter, and shall specifically identify the work and amount of fees to which there is an objection, and the reason. If there is a dispute, the matter will be determined at a hearing.

## ORDER

For the foregoing reasons, Woodridge's motion for summary judgment is *granted* to the extent stated above.

Notification of whether the parties can agree on a computation is due by July 15, 2015. If there is no agreement, an accounting hearing will be scheduled.

Dated at Montpelier, Vermont this 18th day of June 2015.

_____
Mary Miles Teachout
Superior Judge